UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHANIE V. BUTRON,

       *Plaintiff*,

  v.

HOWARD LUTNICK,

       *Defendant*.

Civil Action No. 24-2735 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Stephanie Butron, a former employee of the U.S. Patent and Trademark Office, filed this lawsuit pro se against the Secretary of Commerce[1] alleging discrimination under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1964. The Defendant has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court grants the motion under Rule 12(b)(6).

## BACKGROUND

### A.  Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Since the Plaintiff is proceeding pro se, the Court will consider her Complaint "in light of all filings, including filings responsive to [the] motion to dismiss." *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 40 (D.D.C. 2020) (citations omitted).

---

[1] Although the Plaintiff named former Secretary of Commerce Gina Raimondo as the Defendant in the Complaint, current Secretary of Commerce Howard Lutnick is "automatically substituted as a party" in her place pursuant to Federal Rule of Civil Procedure 25(d).

Ms. Butron was employed as a Patent Examiner at the U.S. Patent and Trademark Office until her resignation. From December 2021 to March 2022, she "faced significant pressure and challenges during [her] telework employment," which led to her resignation on March 9, 2022. Compl. at 7, 8, ECF No. 1. The pressure came from Ms. Butron's "interactions with a background investigator and the demands" of her supervisors. *Id*. Following "a 2.5 hour-interview" with the investigator on December 27, 2021, and "a 4-hour follow-up outside work hours," Ms. Butron "requested sick leave due to the mental health impact of discussing traumatic events." *Id*. On December 28, 2021, "Supervisor No. 1" wished Ms. Butron well and asked that she "submit a sick leave request when able." *Id*. The next day, "while on sick leave," Ms. Butron "validated her time in WebTA and requested additional sick leave for mental health reasons, seeking guidance from Supervisor No. 2 on proper documentation." *Id*.

On December 30, 2021, Supervisor No. 2 informed Ms. Butron that she "needed a specific security time code for the interview and suggest[ed] that document exchanges with the investigator should occur during [her] personal time," which "contradicted Supervisor No. 1's earlier confirmation that no additional approval was needed." *Id*. Later that same day, Ms. Butron "provided both supervisors with detailed information about [her] interview, reiterating that [her] sick leave was due to mental health reasons." *Id*. At unspecified times, Ms. Butron "requested additional sick leave as interviews with the background investigator continued during work hours" and while she "was in training and examining" her first patent applications. *Id*. Ms. Butron also "informed the security specialist, Teresa Heller, about [her] discomfort with the investigator's behavior" of continuing "to demand urgent interviews." Ms. Heller "assured" Ms. Butron "that necessary employment information was available[.]" *Id*.

From March 7 to 8, 2022, Ms. Butron "sought help from Supervisor No. 3, who offered a 90-day personal leave without pay via email." *Id*. Ms. Butron "expressed" her "desire to remain employed and [to] seek reasonable accommodations instead." *Id*. From March 8 to 9, Ms. Butron requested that her "personal therapist be present during the interviews" with the investigator "for support," but the investigator declined the request "and threatened termination" if Ms. Butron failed to "fully cooperate." *Id*. And on March 9, 2022, "under pressure from [her] supervisor's threat," Ms. Butron "complied with the investigator's demands and subsequently submitted [her] resignation," explaining that she "could no longer endure the hostile work environment." *Id*. at 8.

Ms. Butron contacted an Equal Employment Opportunity (EEO) Counselor on January 31, 2023, and filed a formal complaint with the agency on February 27, 2023. *See* EEOC Decision on Req. for Reconsideration (EEOC Dec.) at 21, 22, ECF No. 1. In that complaint, Ms. Butron claimed that she was discriminated against "in reprisal for prior protected activity when, on March 9, 2022," she "was constructively discharged from her position during her probationary period." *See* EEOC Dec. at 21, *see also id*. at 20–23. The agency determined that Ms. Butron's initial contact with the EEO Counselor occurred more than 45 days after the alleged discriminatory event and dismissed her complaint as untimely. *See id*. at 21. In an appeal to the Equal Employment Opportunity Commission (EEOC), Ms. Butron claimed "she was so incapacitated during the applicable 45-day period that she could not contact an EEO Counselor." The EEOC found no supporting medical documentation of Ms. Butron's incapacitation during the relevant time period and thus affirmed the agency's decision. *See id.*

On a motion for reconsideration, the EEOC maintained its position that Ms. Butron "failed to show that she was so physically or emotionally incapacitated that she was unable to contact an EEO Counselor" within the applicable 45-day period. EEOC Dec. at 22. It informed Ms. Butron

of her right to file a civil action "within ninety (90) calendar days from the date" of receipt. *Id*. Ms. Butron received the decision on "March 25th, 2024." Compl. at 5.

### B.     Procedural Background

Ms. Butron filed her Complaint in this Court on September 24, 2024, seeking relief under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1964. *See* Compl. On February 14, 2025, the Defendant moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot. to Dismiss (Def.'s Mot.), ECF No. 11. In its motion, the Defendant construed the Complaint as raising a claim under the Rehabilitation Act of 1973 because it "does not include allegations of race, nationality, sex, or religious discrimination" to plausibly allege a Title VII claim. *Id.* at 4. On March 15, 2025, Ms. Butron opposed dismissal with a 148-page Opposition. *See* Pl.'s Opp'n, ECF No. 14. The Defendant's motion is fully briefed. *See* Def.'s Reply, ECF No. 15; Pl.'s Surreply, ECF No. 19.

## LEGAL STANDARD

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "inference[ ] . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up).

Courts must hold pro se pleadings to a "less stringent standard than formal pleadings" drafted by lawyers, but "need not assume the role of [their] advocate." *Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018) (internal citations omitted). In other words, no matter how

4

"inartfully pleaded" a pro se plaintiff's complaint, a court must grant her the benefit of all inferences that can flow from the facts she alleges. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## DISCUSSION

The Defendant construed Ms. Butron's Complaint as raising a Rehabilitation Act claim. But she clarified in her Opposition that she does not seek relief "based on disability discrimination under the Rehabilitation Act" or a request for "workplace accommodations" because she "never disclosed a disability in [her] application" and does not "have one that interfered with normal working conditions." Pl.'s Opp'n at 10, 11. Instead, Ms. Butron's "legal claim is solely based on Title VII retaliation and coercion," issues that she claims were "thoroughly addressed during the EEO process[.]" *Id*. at 15. More specifically, she alleges "retaliation, coercion, and wrongful actions" because of "the misuse of [her] psychiatric hospitalization history during [her] security clearance process, as well as the support [she] requested from HR and [her] managers." *Id*. at 10. Even with those clarifications, the Defendant urges dismissal on the grounds that Ms. Butron failed to properly exhaust her administrative remedies, failed to file a timely lawsuit, and has asserted no grounds for equitable tolling. *See* Def.'s Reply at 4–5. The Court agrees.

### A.    Exhaustion

The Defendant first argues that Ms. Burton failed to exhaust her administrative remedies. *See* Def.'s Mot. at 4. "It is well-established that a federal employee must exhaust [her] administrative remedies before filing suit in a federal court." *Jones v. Dep't of Justice*, No. 15-5246, 2017 WL 3895064, at *1 (D.C. Cir. July 14, 2017) (per curiam). Before seeking judicial review under the federal anti-discrimination laws, federal employees must comply with administrative procedures, and an employee's failure to meet the prescribed "statutory or regulatory deadlines" may be grounds for dismissal of the "federal court action . . . for failure to administratively exhaust the claim." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017). Because

exhaustion is not a jurisdictional prerequisite to judicial review, "an employee who missteps in the process may avoid dismissal if [s]he qualifies for equitable relief from the deadline by demonstrating good cause for the procedural failure." *Id.*

A federal employee who believes she has "been the victim of unlawful discrimination under the relevant laws" must "consult" with an EEO counselor at her agency "'prior to filing a complaint in order to try to informally resolve the matter.'" *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (quoting 29 C.F.R. § 1614.105(a)). The exhaustion requirement applies equally to claims of retaliation. *See Niskey*, 859 F.3d at 10–11 (holding that the district court "properly dismissed" complaint "for failure to administratively exhaust his racial discrimination and retaliation claims"); *Boyd v. Dist. of Columbia*, No. 22-cv-3741, 2024 WL 324109, at *4–5 (D.D.C. Jan. 29, 2024) (dismissing unexhausted Title VII retaliation claim). The employee "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action[.]" *Doak*, 798 F.3d at 1099 (citations omitted). The agency or the EEOC "shall extend the 45-day time limit" (1) if the employee "was not notified of the time limits and was not otherwise aware of them," (2) if she "did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred," (3) if "despite due diligence she was prevented by circumstances beyond her control from contacting the counselor within the time limits," or (4) "for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2) (cleaned up). If the matter is not resolved through informal counseling, the employee "may then file a complaint with the agency that allegedly discriminated against her," which "begins the formal administrative grievance process, through which the agency investigates, considers, and decides the merits of the complaint." *Doak*, 798 F.3d at 1099–1100.

Here, Ms. Butron's initial contact with the EEO counselor at her agency exceeded the 45-day regulatory time limit. She alleges unlawful conduct between December 2021 to March 2022 that resulted in her "constructive discharge" on March 9, 2022, *see* Compl. at 7–8, but she did not initiate contact with an EEO counselor until approximately 310 days later, on January 31, 2023, *see* EEOC Dec. at 21. And the EEOC rejected her claim that a "medical condition . . . rendered her incapacitated during the 45-day time period," finding no supporting medical documentation to substantiate her claim. *Fredda J. v. Gina M. Raimondo, Sec'y, Dep't of Commerce (Patent and Trademark Office),* Agency No. 23-56-21, 2023 WL 6194391, at *1 (E.E.O.C. Sept. 6, 2023). Ms. Burton thus failed to exhaust her administrative remedies, which is fatal.

### B. Timeliness

In the alternative, the Defendant points out that this lawsuit is untimely. If an employee is dissatisfied with the outcome of the administrative process, she may file a lawsuit "[w]ithin 90 days of receipt of notice of final action taken" by the agency or, if appealed, by the EEOC. 42 U.S.C. § 2000e-16(c). A lawsuit following a charge is limited "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up). And "[s]trict adherence to this type of procedural framework is required, such that a suit brought even a few days late will be dismissed." *Gill v. Dist. of Columbia*, 872 F. Supp. 2d 30, 34 (D.D.C. 2012) (cleaned up).

Ms. Burton brought this lawsuit on September 24, 2024, *see* Compl., approximately 183 days after the EEOC's final order disposing of her claim on March 25, 2024, *see* Compl. at 5 (advising Ms. Burton of her right to file a civil action "within ninety (90) calendar days from the date" of receipt, EEOC Dec. at 22). Her lawsuit is thus untimely under the statutory deadline.

### C.     Equitable Tolling and Equitable Estoppel

Ms. Burton asks the Court to excuse her untimely filing under the doctrine of equitable tolling. Adherence to Title VII's deadlines "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). But these doctrines apply "only in extraordinary and carefully circumscribed instances." *Smith-Haynie v. Dist. Of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (cleaned up). Equitable tolling "is based on the plaintiff's inability to obtain 'vital information bearing on the existence of his claim' despite 'all due diligence'" and equitable estoppel "'precludes a defendant, because of his own inequitable conduct . . . from invoking [a] statute of limitations.'" *Hall v. Dep't of* Commerce, No. 16-cv-1619, 2017 WL 9615889, at *9 (D.D.C. Aug. 22, 2017) (quoting *Chung v. Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003)). "Thus, while the appropriateness of estoppel depends on the actions of the defendant, the appropriateness of tolling is determined by the actions of the plaintiff." *Id.* Ms. Butron's circumstances, unfortunate as they may be, do not entitle her to equitable tolling or equitable estoppel.[2]

Equitable tolling should be "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). The burden of pleading and proving equitable reasons to toll rests with the plaintiff, *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982), who must show "(1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing," *Dyson v. Dist. of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013) (cleaned up). Equitable tolling is

---

[2] Although Ms. Burton makes only equitable tolling arguments in her briefing, the Court considers both equitable tolling and equitable estoppel given her pro se status.

"appropriate only in 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) (quoting *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015)). The Court's equitable power to toll a statute of limitations does "not extend to what is at best a garden variety claim of excusable neglect," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), or a plaintiff's "own misunderstanding of the law or tactical mistakes," *Menominee Indian Tribe of Wisconsin v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (collecting cases).

Equitable estoppel requires "active steps" that the defendant took to prevent the plaintiff from timely filing her complaint. *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998); *see also Smith-Haynie*, 155 F.3d at 579–81. Put differently, a plaintiff must point to some type of "affirmative misconduct" or misleading information regarding the filing deadline on the part of the defendant. *Washington v. WMATA*, 160 F.3d 750, 753 (D.C. Cir. 1998), *cert. denied*, 527 U.S. 1038 (1999).

Ms. Burton explains that her "delay" in submitting her "initial EEO complaint . . . was not due to inaction but to financial hardship, unemployment, emotional distress, and psychological trauma that made it impossible for me to file sooner." Pl.'s Opp'n at 4. And she claims that she "initially did not understand" she "needed to file a separate lawsuit in District Court to continue [her] case." *Id*. at 7. These allegations do not meet the high bar for equitable tolling. *See Jackson*, 949 F.3d at 778–79 (rejecting tolling argument premised on "debilitating mental anguish as a result of the government's misconduct" and allegations of, *inter alia*, "distrust," "anxiety," and "financial hardship"); *Dahlman v. American Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 77 (D.D.C. 2011) ("Impaired judgment or general claims of mental illness is not enough to justify

equitable relief from procedural requirements." (cleaned up)); *Speiser v. Dep't of Health and Human Servs.*, 670 F. Supp. 380, 383 (D.D.C. 1986), *aff'd*, 818 F.2d 95 (D.C. Cir. 1987) (declining to toll EEOC deadlines where plaintiff claimed "she was mentally incapacitated from the date of her resignation until shortly before she contacted an EEO counselor" and her incapacitation constituted "circumstances beyond her control" which prevented her from filing her EEO complaint timely).

Ms. Burton fares no better with equitable estoppel. She blames the "agency's own actions," Pl.'s Opp'n at 31, asserting that her delay "was caused by USPTO's retaliation, financial and emotional devastation, and legal uncertainty created by their actions," *id*. at 7. But she does not allege that the agency misled her about the relevant deadlines or took steps to prevent her from filing this lawsuit. *See Currier*, 159 F.3d at 1367.

Indeed, Ms. Butron's excuses mirror those found wanting in *Smith-Haynie*, 155 F.3d 575. There, the plaintiff "swore in her affidavit that she was confused by her right-to-sue letter," "did not understand it," and "was further traumatized and simply unable to psychologically deal with it." *Id.* at 580. The D.C. Circuit nonetheless found the plaintiff's "statement that she did not understand the letter" as "general and conclusory," noting that she "does not contest that she was informed in the letter of the 90-day limitations period or aver that the meaning of the time limit was unclear to her." *Id*. And it observed that while her "supplementary affidavit does describe emotional difficulty," it is "of a kind that was basically related to the work environment" rather than her inability "to engage in rational thought and deliberate decision making." *Id*. (cleaned up). The court ultimately found that the plaintiff had not overcome the "high" hurdle for equitable tolling based on her claim of mental incompetence, *id*. at 579, nor asserted grounds for equitable

10

estoppel since "nowhere" did "she claim that anything the defendants did or said misled her as to the effect of the 90-day limitation period on her right to seek judicial relief," *id*. at 581.

Because equitable tolling and equitable estoppel do not excuse Ms. Burton's untimely filing, the Court must grant the Defendant's motion and dismiss this case. On this record, she simply has not met her burden to avoid dismissal. *See Dahlman*, 791 F. Supp. 2d at 76 ("Once a defendant has pleaded a failure either to exhaust administrative remedies or to comply with statutory time limits, the burden shifts to the plaintiff to make the case that dismissal is not warranted." (citations omitted)).

## CONCLUSION

For these reasons, the Court grants the Defendant's Motion to Dismiss, ECF No. 11. A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   August 1, 2025